UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FERNANDO FRAIJO, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>METRO ONE LOSS PREVENTION SERVICES GROUP, INC., a Maryland corporation, METRO ONE LOSS PREVENTION SERVICES GROUP (WEST COAST), INC., AND METRO ONE LOSS PREVENTION SERVICES GROUP (GUARDS), INC.,,<br><br>Defendants. | Case No. 3:26-cv-05733-TMC<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |

## I. INTRODUCTION

In this putative class action, Plaintiff Fernando Fraijo alleges that Defendants Metro One Loss Prevention Services Group, Inc., Metro One Loss Prevention Services Group (West Coast), Inc., Metro One Loss Prevention Services Group (Guards) (collectively, "Metro One") violated Washington law by denying employees their required wages, meal periods, and rest breaks for three years. Fraijo sued in Pierce County Superior Court, and Metro One removed the case to federal court (Dkt. 1), invoking jurisdiction under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d).

Fraijo now moves to remand. Dkt. 9. Because Metro One has failed to show an amount in controversy sufficient to invoke the Court's CAFA jurisdiction, the Court GRANTS the motion.

## II. BACKGROUND

Fraijo, representing hourly-paid, on-site employees performing security and related services for Metro One's customers, filed his class action complaint in Pierce County Superior Court on May 20, 2026. Dkt. 1-1.

Fraijo alleges that Metro One violated Washington's wage and hour laws by:

1. engaging in wage theft by (a) "systematic[ally] fail[ing]" to pay for time worked by class members before and after their shifts and (b) "systematic[ally] deducti[ng]" thirty minutes from every shift over five hours (Dkt. 1-1 ¶¶ 7.1–7.4);
2. failing to ensure that employees always received required rest breaks and failing to compensate for rest break violations (Dkt. 1-1 ¶¶ 8.1–8.7);
3. creating work conditions that caused meal periods to be missed, and failing to compensate for meal period violations (Dkt. 1-1 ¶¶ 9.1–9.8); and
4. willfully withholding wages by "knowing[ly] and intentional[ly]" failing to pay wages for all hours worked (Dkt. 1-1 ¶¶ 10.1–10.3).

Metro One removed the case to federal court, claiming that this Court has subject matter jurisdiction under CAFA. Dkt. 1. Fraijo now moves to remand, arguing that Metro One cannot satisfy the amount in controversy requirement under CAFA. Dkt. 9.

## III. LEGAL STANDARDS

A defendant may remove a case from state to federal court only if the federal court would have original subject matter jurisdiction. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). "If at any time before final

judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"CAFA gives federal courts jurisdiction over certain class actions" that meet three requirements. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)). The class must have more than 100 members, the parties must be minimally diverse, and the amount in controversy must exceed $5 million. *Id.* at 85. On a motion to remand, the defendant must establish, "by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(B) (internal quotations omitted)).

## IV. DISCUSSION

To exercise jurisdiction under CAFA, the Court must assess whether the case meets all three of CAFA's requirements. No party disputes that the first two requirements are met. First, the proposed class has more than 100 members. Dkt. 1 ¶ 18 (noting that there are 739 applicable employees); Dkt. 9. And second, because Fraijo is domiciled in Washington and the Metro One entities are citizens of Maryland and New York, CAFA's minimal diversity requirement is met. Dkt. 1 ¶¶ 21–23.

The only question is whether the amount in controversy exceeds $5 million. Metro One argues that it does (Dkt. 1 ¶¶ 25–43); Fraijo responds that Metro One's calculation relies on unreasonable assumed violation rates (Dkt. 9). The Court agrees largely with Fraijo and concludes that the amount in controversy does not exceed $5 million.

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). If the complaint does not state the amount in controversy, the defendant's notice of removal may do so. *Dart*, 574 U.S. at 84. But if the defendant's alleged amount is disputed, then the defendant must show by a

preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 88; *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We therefore hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").

Metro One argues that CAFA jurisdiction is proper because the potential class damages and attorneys' fees would exceed $5 million. Dkt. 1 ¶¶ 25–43 (alleging that Fraijo seeks relief of at least $8,097,802 and noting that Fraijo did not plead a specific amount in the complaint). According to its explanation, Metro One assumed that the 739 class members had an average hourly pay rate of $24.57 per hour and had worked a total of at least 99,803 shifts (or 30,791 workweeks) since May 20, 2023. *Id.* ¶ 29. For rest breaks, Metro One assumed there was at least one rest break violation per shift for each class member, amounting to $408,693 in damages. *Id.* ¶ 34. For meal periods, Metro One assumed that there was at least one meal period violation per shift for each putative class member, amounting to $1,226,080 in damages. *Id.* ¶ 35. Metro One also had another meal period category because in addition to payment for the "30 minutes of allegedly auto-deducted time" that was sometimes worked, Fraijo sought 30 minutes of pay in alleged damages for each instance in which a compliant meal period was not provided. *Id.* ¶ 36. For Fraijo's off-the-clock claims, Metro One assumed that each class member had 30 unpaid minutes per workweek, amounting to $378,267. *Id.* ¶¶ 37–38. Metro One assumed that every alleged violation was willful, doubling the damages for rest and meal break and off-the-clock violations. *Id.* ¶¶ 25–43. Lastly, Metro One assumed that Fraijo's counsel would be awarded 25 percent of the total recovery in attorneys' fees, which adds another $1,619,560. *Id.* ¶¶ 39–41.

But the flaw in Metro One's calculations, which Fraijo points out, is that the allegations in the complaint do not adequately support Metro One's assumed violation rates. Metro One, for instance, "assume[d]" effectively a 100 percent meal period violation rate and a fifty percent rest

break violation rate because it assumed that each class member "ha[d] missed one rest break and one meal period per shift." Dkt. 1 ¶ 33; Dkt. 9 at 9 (citing WAC 296-126-092 (requiring one meal period and two paid rest breaks in a typical eight-hour shift)).

These assumptions unreasonably extrapolate beyond the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. First, Metro One assumed that there was "at least one meal period violation per shift for each putative class member," and tacked on an "additional" 30 minutes of pay for each unpaid meal period. Dkt. 1 ¶¶ 35–36. Fraijo does not allege in the complaint that all meal periods were missed for each of the class members—merely that Metro One created poor working conditions that caused meal periods to be missed. Dkt. 1-1 ¶¶ 9.1–9.8. Fraijo's allegations specifically conditioned that this issue occurred "at times." *Id.* ¶¶ 5.21–5.28 (repeating "at times" five times while describing the issue). Second, Metro One assumed that each class member had at least one rest break violation per shift. Dkt. 1 ¶ 34. Fraijo states, however, that Metro One "fail[ed] to ensure" that class members "always received" their rest break. Dkt. 1-1 ¶¶ 8.5, 5.11–5.20; *see also id.* ¶ 5.27. A reasonable reading of the complaint would distinguish between not always ensuring breaks and never providing them. Third, Fraijo did allege that Metro One engaged in wage theft through "systematic failure" to pay for time worked outside of their shift and through an "automatic" or "systematic deduction" of thirty minutes from every shift over five hours. Dkt. 1-1 ¶¶ 5.25, 7.1–7.4. But Fraijo's complaint repeatedly limited those allegations, stating violations occurred "at times" or "sometimes." *See id.* ¶¶ 5.19–5.32 ("Defendants failed to compensate [class members] with thirty minutes of wages … *for each* instance in which a meal period … was not taken") (italics added). Words like "automatic" and "systematic" may imply a pattern, potentially one that is often recurring. But when they are coupled with phrases like "at times," "sometimes," and "for each instance," those words, standing alone, cannot reasonably convey that Metro One *always* violated Washington

law. *Ibarra*, 775 F.3d at 1198–99 (determining that "pattern and practice" of labor law violations did not mean that violations were universal). The only reasonable assumption made by Metro One is that "each" class member had worked 30 minutes off the clock per workweek. Dkt. 1 ¶¶ 27–38. Fraijo protests Metro One's use of 30 minutes, but "30 minutes" is within the time range given by Fraijo, making it a reasonable assumption. Dkt. 1; Dkt. 1-1 ¶ 5.7; *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (stating that assumptions are reasonable if they are "founded on the allegations of the complaint."). But for the rest of the violations, Metro One's assumptions—violation rates of meal period, rest break, and wage theft—lack sufficient basis in the complaint.

In the absence of other evidence or reasonable assumptions provided by Metro One, the Court uses a 20 percent violation rate to assess the amount in controversy requirement. *See Arnold v. Marriott Int'l*, No. 3:24-CV-00221-RAJ, 2025 WL 1919260, at *4 (W.D. Wash. July 11, 2025) (collecting cases); *Ramirez v. Cornerstone Bldg. Brands*, No. 2:21-cv-01017-MCE-JDP, 2022 WL 1556664, at *1 (E.D. Cal. May 17, 2022) (20 percent violation rate was reasonable where complaint alleged violations occurring "often" or "from time to time" as well as violations resulting from "company-wide policies and procedures").

Metro One also included attorneys' fees equal to 25 percent of the amount in controversy on Fraijos' substantive claims. Dkt. 1 ¶¶ 39–41. Although the Ninth Circuit has declined to adopt a 25 percent per se rule on attorneys' fees in class actions, courts in this district have assumed such an award is a reasonable estimate when plaintiffs do not provide an alternative. *See, e.g.*, *Sumo v. PSL Assocs., LLC*, No. 25-5436-BHS, 2025 WL 2624531, at *3 (W.D. Wash. Sept. 11, 2025) (citing *Arias*, 936 F.3d at 928). Fraijo seeks attorneys' fees under Washington's fee-shifting statutes, in which the fee award would be paid by Metro One. Dkt. 1-1 at 15 (noting in the class action complaint that Fraijo seeks "[r]easonable attorneys' fees and costs directly

related to the litigation of the class action claims pursuant to RCW 49.46.090, 49.48.030, and 49.52.070"); Dkt. 9 at 14–15 (quoting *Lopez v. Advanced Drainage Sys.*, 777 F. Supp. 3d 1100 (N.D. Cal. Apr. 11, 2025)). Metro One contends that, under a statutory fee shifting scheme, courts in the Ninth Circuit must include both incurred and reasonably anticipated future attorneys' fees. Dkt. 18 at 11–12 (citing *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018)). Indeed, the attorneys' fees under fee-shifting statutes "are [to be] included in the amount in controversy." *Fritsch*, 899 F.3d at 794. Because the Court is not given an alternative, the Court assumes a 25 percent potential fee award, which would be about $516,088.35.

But even with this fee award, Metro One's assumed damages do not meet the amount-in-controversy requirement. Based on the reasonable 20 percent violation rates for meal and rest breaks, off-the-clock work time, and Metro One's proposed attorneys' fee, the total amount in controversy would be about $2,580,441.73—still short of the required $5 million.

| **Claim** | **Assumption** | **Amount in Controversy** |
|---|---|---|
| Rest Breaks | 20 percent | $326,954.63 |
| Meal Periods | 20 percent | $490,431.94 |
| Additional Meal Periods | 20 percent | $490,431.94 |
| Off-the-Clock Work | 30 minutes | $756,534.87 |
| Attorneys' Fees | 25 percent | $516,088.35 |
| **Total Amount in Controversy** | | **$2,580,441.73** |

Metro One, as custodian of the records, could have provided additional evidence to support its assumed violation rates; it chose not to do so. *See Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1129–30 (C.D. Cal. Aug. 31, 2010). In such absence, assumed violations of 50 percent of rest breaks and 100 percent of meal periods are not supported by the allegations of the complaint or otherwise relevant caselaw in this district. For these reasons, the Court concludes that Metro One has not met its burden under CAFA. Remand is therefore required.

## V. CONCLUSION

Metro One has not shown by a preponderance of the evidence an amount in controversy meeting CAFA's jurisdictional requirement. For the foregoing reasons, the Court GRANTS Fraijo's motion to remand. The Court ORDERS as follows:

1. The above-captioned case is REMANDED to the Pierce County Superior Court;
2. The Clerk shall mail a certified copy of this Order to the Clerk of Court for the Pierce County Superior Court; and
3. The Clerk shall transmit the record herein to the Clerk of Court for the Pierce County Superior Court.
4. Following remand, the Clerk shall close this case.

Dated this 29th day of October, 2026.

Tiffany M. Cartwright
United States District Judge